THE ROCHESTER.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1898.)

No. 434.

1. COLLISION—STEAMER AND SAIL—LOOKOUTS.
    Where a schooner, shortly after leaving port, collided with a steamer coming in, *held*, on conflicting evidence and the probabilities of the case, that the collision was due to the fact that all the schooner's crew, except the master at the wheel, were engaged in setting sail, and that, the master's vision being obstructed by the sails, he several times left the wheel, and went to the schooner's side, to observe the approach of the steamer, and that the constant yawing of the schooner, whereby she displayed different lights to the steamer, misled the latter, and caused her to change her course; and that, if the steamer was in error in not stopping and reversing as provided by rule 21, it was an error in extremis.

2. SAME—DUTY OF MASTER.
    The master of a sailing vessel has no right to assume the duty of wheelsman at a point where the commerce of the lakes converges to a port like that of Chicago. It is his duty at such a time to keep a vigilant outlook, and to be on hand on the deck, where he can observe the movements of approaching vessels, and give orders accordingly. 81 Fed. 237, affirmed.

On appeal from the District Court of the United States for the Northern District of Illinois.

A libel was filed by the owner of the schooner Amaretta Mosher against the steamer Rochester in a cause of collision civil and maritime. The owners of the steamer answered thereto, and also filed a cross bill against the owner of the schooner. The district court at the hearing dismissed the libel, and pronounced for the cross libelant. The owner of the schooner appealed. The Mosher, a three-masted schooner, sailed from the port of Chicago shortly after 8 o'clock in the evening of the 4th day of November, 1895, bound on a voyage to Ford River, in the state of Michigan. The night was fair. There was no sea, and the wind (a fresh breeze) was from the south. Her crew consisted of seven men,—master, mate, cook, and four seamen. All the crew, except the master, who was at the wheel, and possibly a man on the lookout for part of the time, were engaged from the time of leaving the port of Chicago to the time of collision in setting canvas. The schooner was light, and sailed on a course N. by W. ½ W., at a distance of two miles from land. She collided with the Rochester near Grosse Point, six or seven miles from the port of Chicago. The Rochester was bound on a voyage from the port of Buffalo to the port of Chicago, proceeding on a course S. by E. Her master was on watch on the promenade deck, in his proper place. Her lookout was in the eyes of the boat, and her mate on the starboard side of the steamer, on the forward promenade deck, standing on lookout. The Mosher was proceeding at the rate of six or seven miles an hour; the Rochester, at the rate of eleven miles an hour. The relation of the story of the collision by the respective parties is substantially as follows: The Mosher, according to the story of her captain, saw the masthead light of the Rochester at a distance of six or seven miles away, and three or four points on her port bow, and the red light of the Rochester soon came into view. In about ten minutes the captain of the Mosher left his wheel set, and exhibited a torchlight on the after port quarter; the Rochester being then two points on the port bow of the Mosher, and three or four miles distant. The Rochester then exhibited her green light, and passed across the bows of the schooner until she was a point on the lee of the schooner. Then, after a short time, and when between a mile and a half and two miles distant, and three points on the starboard bow of the Mosher, the Rochester blew one blast of her whistle; still continuing to exhibit to the Mosher her green light. The captain of the Mosher ordered his crew to resume work of setting the canvas, which had for a moment been suspended, and thereupon, twice, at an interval of six or seven minutes, left his wheel loose, and went to the starboard side of the schooner, to look under the sails, which obscured his view, to observe the movements of the Rochester. The first time, she was a mile and a half away, exhibiting a green light. The second time, he saw the two lights of the Rochester, and then her red light alone, about four points on the Mosher's starboard bow. Very soon thereafter the collision occurred. The Mosher struck the Rochester on the bluff of the port bow, end on. The captain of the Mosher insists that she kept on her course from the time the torch was exhibited to the time of the collision, that no change was made with the wheel, and that her lookout reported the Rochester to him but once. The Rochester, according to the story of her crew, had lookout, in addition to the wheelsman, consisting of the captain, the mate, and the seaman on watch, each in his proper place, and vigilant to perform his duty. The Mosher, exhibiting her green light, was first observed when she was from 1½ to 2 miles distant on the port bow. The captain at once ordered the wheel starboarded. In a short time the schooner suddenly shut out her green light, and exhibited her red light directly ahead of the steamer, and immediately the captain of the Rochester ordered her helm a-port, and then hard a-port to swing the vessel red to red; one blast of the whistle being sounded, to indicate to the Mosher that the vessels would pass port to port. The steamer swung to the westward; the schooner almost immediately swung, also, to the westward, exhibiting her green light; and the collision immediately followed,—the starboard bow of the schooner striking the bluff of the steamer's port bow, and the jib boom of the schooner piercing the steamer's deck about 25 or 30 feet forward.

Chas. E. Kremer, for appellant.

George S. Potter, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, delivered the opinion of the court.

We agree with the court below that, if we assumed the truth of the direct testimony of all the witnesses, we should be unable to determine which party was at fault. But a careful analysis of the evidence satisfies us that the court below arrived at a correct conclusion. The testimony on behalf of the schooner is confusing and unreliable. It is manifest that her captain and crew had no accurate notion of distance or of navigation. The Mosher was but two miles off shore, and her master and crew locate the Rochester when she was first observed so that the latter would be navigating half a mile inland from the shore. The witnesses, either ignorantly or willfully, misstate the facts. The testimony on the part of the Rochester is much more reliable and consistent. She observed the Mosher when a mile and a half or two miles distant; the latter exhibiting her green light. The Rochester immediately starboarded, going to port. Upon this course the vessels exhibited to each other their green lights, and would, confessedly, had no change of course occurred, have passed each other in safety. What then induced the change which brought about this collision? The Mosher suddenly exhibited to the Rochester both her lights, and then her red light. According to the story of the captain of the Mosher, her course was not changed at any time. The learned and astute proctor for the Mosher would therefore have us believe that this change of lights was produced by the yawing of the vessel, and claims fault on the part of the Rochester, in that she did not allow therefor, and starboard her wheel long enough or strong enough to give the Mosher a sufficiently wide berth. This notion would seem to have had being in the imagination of the proctor, for there is no suggestion of it by the schooner's witnesses; nor do we understand there was, nor can we assume there could have been, sufficient yawing of the schooner to shut out the one light exhibited, and to exhibit the other light to the Rochester, within the distance the two vessels were apart, and within the time intervening before the collision. It is true, it was the duty of the steamer to keep out of the way of the sail vessel; the latter keeping her course. This the steamer attempted to do, and undoubtedly would have accomplished but for the remarkable change of course of the schooner. That the latter should change her course seems unaccountable, and is only explicable upon the fact that the master on two occasions left the wheel loose, which brought about a change in her course. If the result would be to cause the vessel to luff up into the wind, as is insisted by the Mosher, we think the clear inference is that the change in these lights was brought about by an attempt of the master, when he resumed the wheel, to put her back on her course. If, on the contrary, the effect would be to send the schooner to starboard, that of itself would sufficiently account for the change. Whatever would result, it is clear there was this sudden change in the course of the schooner, threatening collision, and which impelled the steamer to change her course to the westward. The master of the Mosher had

charge of the wheel. The crew were engaged in setting canvas. The vessel was at a point where the commerce of the lakes converges to the port of Chicago. The master had no right to assume the duty of wheelsman, under such circumstances. His duty at that time was to keep a vigilant outlook,—to be on hand on the deck where he could observe the movements of approaching vessels, and give orders accordingly. The City of Augusta, 50 U. S. App. 39, 44, 25 C. C. A. 430, and 80 Fed. 297. The court was of the opinion that no one on the schooner, except the captain, was on the lookout, and that his disadvantageous situation obliged him to leave the wheel, whereby the schooner went to starboard, indicating to the steamer the change in her course. We are inclined to agree with the court below upon this proposition, notwithstanding the testimony on the part of the schooner asserts the presence of a lookout. It would seem remarkable, if a proper lookout was stationed, that the captain should have heard from him but once during the approach of the steamer, and should have appealed to the crew engaged in setting canvas, and not to the lookout, to ascertain what light the schooner was exhibiting. It is said the steamer was at fault in having no vigilant lookout. We find no foundation in fact for this objection. The captain and the mate were on watch, in addition to the usual lookout, and they all appear to have been vigilantly employed in the performance of their duty.

It is also objected that the steamer should have stopped and backed, instead of porting her helm. Rule 21 provides that every steam vessel which is directed by the rules to keep out of the way of another shall, on approaching her, if necessary, slacken her speed, or stop or reverse. The difficulty with the application of this rule here is that the steamer ported her helm and went to the starboard to avoid the schooner, and the vessels would have passed each other safely, but for the faulty action of the schooner. We think it very doubtful whether, when the schooner exhibited her red light, the Rochester could have avoided a collision by stopping and reversing. If, however, that could have been done, the course adopted was taken *in extremis*, to avoid an impending collision induced by the fault of the schooner, and for which the steamer should not be held blameworthy. The decree will be affirmed.